# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WYATT KEVIN HARRIS,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 1:25-cv-00555-SAB<br>ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br>(ECF Nos. 12, 16) |

Plaintiff Wyatt Kevin Harris ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the final decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in the step-two analysis of Plaintiff's mental impairment, by not properly evaluating fatigue in Plaintiff's RFC, and in the analysis of Plaintiff's subjective testimony.

For the reasons explained herein, the Court will reverse and remand the decision of the Commissioner.

/ / /

## I.

## BACKGROUND

### A. Agency Procedural History

On May 25, 2022, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 1, 2022. (ECF No. 8, Administrative Record ("AR"), 17.) Plaintiff's application was initially denied on September 8, 2022, and denied upon reconsideration on January 6, 2023. (Id.) Plaintiff requested a hearing before an ALJ. On April 10, 2024, Plaintiff, represented by counsel, appeared via a telephonic hearing in front of an ALJ. (Id.) Plaintiff and vocation expert ("VE") Patricia Murphy testified. (Id.) On May 16, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 28.) On March 13, 2025, the Appeals Council denied Plaintiff's request for review. (AR 1-5.)

### B. The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through September 30, 2026, and he had not engaged in substantial gainful activity since January 1, 2022, the alleged disability onset date. (AR. 19.) The ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, obesity, chronic fatigue syndrome, meralgia paresthetica, and obstructive sleep apnea. (Id.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 21.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) except Plaintiff was limited to frequently climbing, balancing, stooping, kneeling, crouching, crawling; Plaintiff must avoid concentrated exposure to hazards such as unprotected heights; Plaintiff was limited to frequently reaching overhead with the left upper extremity; and Plaintiff was limited to frequently pushing and/or pulling with the left upper extremity. (AR 22.)

The ALJ found that Plaintiff was unable to perform any past relevant work, Plaintiff was 59 years old, and he had at least a high school education. (AR 26-27.) Considering Plaintiff's

age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 27.) Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Social Security Act, from January 1, 2022, through the date of decision, May 16, 2024. (AR 28.)

Plaintiff sought timely review of the Commissioner's final decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 5, 6, 7.) Thereafter, the parties filed their briefs on the matter.[1] (ECF Nos. 12, 16.)

**II.**

**LEGAL STANDARD**

**A. The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective. Rule 5 states, "[t]he action is presented for decision by the parties' briefs." Fed. R. Civ. P. Appx. Rule 5. The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules." Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022. Like an appeal, "the briefs present the action for decision on the merits. This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record." Id. The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Id. Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in three ways. First, Plaintiff argues that the ALJ failed to find Plaintiff's mental impairment severe at step two. (ECF No. 12, pp. 4-7.) Second, Plaintiff contends that the ALJ erred in the analysis of Plaintiff's chronic fatigue syndrome. (Id. at pp. 7-9.) Third, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's subjective complaints, leading to an RFC that is inconsistent. (Id. at pp. 9-10.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 16.) Though the Court agrees with the Commissioner as to the ALJ's step-two determination, the Court agrees with Plaintiff regarding the ALJ's analysis of Plaintiff's subjective complaints regarding his chronic fatigue syndrome.

### A. Analysis of Severe Impairment(s) at Step Two

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996), citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987). Step two is broken down further into two determinations. As explained by relevant regulations, for the first determination,

> If you are not doing substantial gainful activity, we will then determine whether you have a medically determinable physical or mental impairment(s) (see § 404.1520(a)(4)(ii)). Your

> impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

20 C.F.R. § 404.1521; see 20 C.F.R. § 416.921.

As for the second determination, "[a]fter we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe." Id. In order to be a severe impairment, such impairment or combination of impairments must "limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); see 20 C.F.R. § 416.920(c). In defining basic work activities, the regulations state:

> When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522; see 20 C.F.R. § 416.922. Furthermore, "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509; see 20 C.F.R. § 416.909; see also 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii). Finally, it is important to note that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290, citing Yuckert, 482 U.S. at 153-54.

Plaintiff argues that ALJ improperly mischaracterized the evidence and supplemented his own lay person opinion for that of a medical professional as to Plaintiff's mental impairments. In

the opinion, the ALJ found that:

> The claimant's medically determinable mental impairment of depression/bipolar disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. In addition, the medical record shows it to be "currently well controlled" throughout the period under consideration. (See, Exhibit B7F/7).

(AR 20.)

In support of this finding, the ALJ discussed the following:

> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering or applying information. In this area, the claimant has no limitation. There is no objective evidence of recurring deficits in this domain throughout the period under consideration.
>
> The next functional area is interacting with others. In this area, the claimant has no limitation. There is no objective evidence of recurring deficits in this domain throughout the period under consideration.
>
> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant alleged his conditions affected his concentration in his Function Report. (Exhibit B6E/6). At an August 2022 psychological consultative examination and mental status examination, the claimant exhibited "adequate" attention and concentration (Exhibit B5F/3) and was able to complete serial three, could perform alphanumeric reasoning and simple arithmetic and say the months of the years backwards and days of the week forward and backwards, and spell "world" forward and backwards correctly. (Exhibit B5F/4). The longitudinal objective record does not document recurring deficits in this area. The total medical evidence of record shows the claimant has no more than mild limitations in this area.
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation. There is no objective evidence of recurring deficits in this domain throughout the period under consideration.

(Id.)

Thus, in three of the four areas of Paragraph B criteria, the ALJ found that there was no objective evidence to support any deficit. In the area of concentrating, persisting, or maintaining

pace, the ALJ discussed Plaintiff's functional report, a psychological consultative examination, as well as the longitudinal evidence. With that, the ALJ found that in this area, Plaintiff had only a mild limitation. The Court finds that this analysis adequately meets the requirements of the step-two analysis as set forth in the regulations.

In support of his position, Plaintiff makes a series of arguments relating to how an ALJ is required to evaluate a mental impairment when crafting an RFC. Of course, an RFC determination is separate and apart from a step-two determination with its own requirements and regulations. Indeed, Plaintiff's lead case directs the Court to a discussion by the Ninth Circuit regarding RFC determinations. Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998). This is also true of Plaintiff's citation to Sanchez v. Apfel, where the court was discussing the now-superseded treating physician rule in the context of an RFC determination. 85 F. Supp. 2d 986 (C.D. Cal. 2000). Thus, the thrust of Plaintiff's position appears to be from a separate area of the law within Social Security, which is not persuasive.

Finally, the Court notes that Plaintiff chides the ALJ's determination as focusing on "the lack of objective findings contained within the record as opposed to noting that Plaintiff's mental illness did not lend itself to such findings." (ECF No. 12, p. 6.) But that is not what the relevant regulations require. 20 C.F.R. §§ 404.1521, 416.921 ("Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).). Rather, lack of objective medical evidence in a step-two inquiry cannot support a severe impairment.

Accordingly, the Court finds that the ALJ did not err in his step-two inquiry. The Court has considered the parties' remaining arguments and finds them either unpersuasive or unnecessary to reach in light of the foregoing.

**B. Analysis of Plaintiff's Subjective Complaints**

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). As relevant here, where the ALJ

"determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

In addition, an ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid," and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Lingenfelter v. Astrue, 504

F.3d 1028, 1040 (9th Cir. 2007). For example, "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a). Additionally, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id., citing Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1225 (9th Cir. 2010).

In his brief, Plaintiff argues that the ALJ failed to give clear and convincing reasons for finding Plaintiff's subjective complaints regarding fatigue incredible, leading to an incongruent RFC. (ECF No. 12, pp. 7-9.) Furthermore, Plaintiff's third argument as well argues more generally that the ALJ failed to consider all of Plaintiff's subjective complaints as a whole. (Id. at pp. 9-10.) The Court addresses these related arguments together. Upon review of the ALJ's decision, the Court finds that Plaintiff is correct regarding the analysis of his complaints of fatigue and that the error was not harmless.

In the decision, the ALJ summarized Plaintiff's subjective complaints as follows:

> The claimant alleged in his Function Report that his conditions limit his ability to work because he will "sleep 12 hours a night" and "doze during the day" and "have no energy." (Exhibit B6E/1). He claimed that acts such as taking a shower or going to the store "is very demanding" and he'll be "totally worn out." (Exhibit B6E/1). He stated, he is "not able to be alert enough to drive truck for length of time." (Exhibit B6E/1). The claimant did not allege to have any conditions that affected his ability to perform any exertional, postural or manipulative activities (Exhibit B6E/6). Rather, he alleged his conditions only affected his concentration when asked to identify what abilities were affected by his conditions. (Exhibit B6E/6).
>
> * * *
>
> The claimant has alleged similar subjective complaints and functional limitations in his disability hearing testimony, which is fully considered in the determination of this decision, but are not repeated her for the sake of economy. However, the claimant specifically alleged at his disability hearing that he believes he is unable to work because "I got worn out real easily," mentioning his diagnosis for Epstein-Barr syndrome as well as mononucleosis. He claimed he wakes up tired and claims he cannot stay awake for more than four hours, so he can no longer drive truck. He alleged light-headedness and dizziness when turning his head a certain

> way. He also alleged migraine headaches one or more per week, for which he takes Oxycodone for pain symptoms. He also alleged back pain.
>
> The claimant testified he doctor's think his Epstein-Barr could be the cause of his fatigues, but thinks there is no specific treatment for it. He testified he sleep 10 to 12 hours per day. He claimed he does not do much all day and can only spend 15 minutes in a store, claiming, "Any kind of exertion just wears me out." He denied significant hobbies or social activities, which began around the end of 2021 when he started becoming increasingly fatigued.

(AR 23.)

The ALJ found that after considering the evidence, Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; "however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id.)

As to Plaintiff's fatigue, the ALJ discussed that,

> The undersigned considers both the claimant's chronic fatigue syndrome and obstructive sleep apnea together because of the overlapping symptomology of fatigue and daytime sleepiness. At his July 2022 internal medicine consultative examination, the claimant's complained of early fatigue and daytime somnolence, but stated he had not had a sleep study performed yet. (Exhibit B4F). (Exhibit B4F/2). The claimant exhibited "a bit of coarse breath sounds" during examination and gave self-reports of snoring and apneic episodes. (Exhibit B4F/5). March 2023 treatment notes showed the claimant referred to a pulmonologist for a sleep study. (Exhibit B7F/7). At this time he continued to alleged daily fatigue worsened by activity, which he believed prevented him from working because, despite sleeping 8 (eight) hours per day, his sleep was not restful. (Exhibit B7F/7).
>
> The claimant presented to establish treatment at the Kern Medical Center August 2023, alleging daytimes sleepiness, but still never having obtained a sleep study, so one was ordered. (Exhibit B8F/49-52). Treatment notes from September 2023 refer to the clamant having obtained as sleep study and/or having a CPAP titration schedule the following day. (See, Exhibit B8F/36-37). The claimant had not obtained his CPAP as of early November 2023. (Exhibit B8F/23). However, by January 2024, treatment notes recorded the claimant "doing well with CPAP" and "using it regularly." (Exhibit B8F/9).

(AR 24.)

The Court finds that the ALJ erred in two respects. First, the ALJ considered Plaintiff's

chronic fatigue syndrome and obstructive sleep apnea together "because of the overlapping symptomology of fatigue and daytime sleepiness." (AR 24.) The ALJ cites to no record, medical opinion, or other authority that would allow for the ALJ to make an inference that chronic fatigue syndrome and obstructive sleep apnea can be analyzed as one in the same. Though the Court notes the obvious implication that obstructive sleep apnea could possibly contribute to fatigue, the ALJ has not explained how Plaintiff's chronic fatigue syndrome is necessarily caused *only* by his obstructive sleep apnea. Thus, it appears that the ALJ has inserted his own interpretation on how to review Plaintiff's complaints of fatigue as opposed to addressing it separately. Here, because the ALJ collapsed these two inquiries into one, the Court is unable to meaningfully review whether and to what extent the ALJ considered and discounted Plaintiff's subjective complaints regarding fatigue.

To be sure, an ALJ may consider related or overlapping impairments together, but if the ALJ does so, the ALJ must still be clear in the decision which aspects of a plaintiff's subjective complaints are being rejected and for what reason. Smartt, 53 F.4th at 499 ("Ultimately, the 'clear and convincing' standard requires an ALJ to show his work."). That did not occur here, and therefore, the ALJ likewise erred by not addressing Plaintiff's fatigue outside the realm of obstructive sleep apnea. Nor is the Court able to make any inferences from the RFC on what aspects of Plaintiff's complaints of fatigue were credited or discredited.

The Commissioner's opposition to this issue is not persuasive. Indeed, the Commissioner seemingly concedes that the only pathway to view the ALJ's opinion as supported by substantial evidence would be to assume chronic fatigue syndrome and obstructive sleep apnea can be assessed as the same impairment, along with another inference that because Plaintiff reported doing well will a CPAP (for his sleep apnea) his fatigue necessarily improved. (ECF No. 16, p. 6.) Yet, and again, the ALJ did not give a sufficient basis for considering these impairments together while not also delineating which testimony was incredible for which reasons. Again, the inference regarding the CPAP requires inferring that by doing well on a CPAP, Plaintiff's fatigue was likewise improving. The Court finds that this is a bridge too far to not have been explained by the ALJ in his decision.

In an effort to shore things up, the Commissioner then asks the Court to consider the ALJ's discussion of the medical opinions. But this does not clear up the issue of considering chronic fatigue syndrome and obstructive sleep apnea as one in the same. Furthermore, the Commissioner's citation to specific aspects of the medical opinions that the ALJ did not discuss in the opinion is not persuasive on this issue. See Orn, 495 F.3d at 630; Treichler, 775 F.3d at 1102 (The "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). Though the Court "must consider the entire record as a whole," Hill, 698 F.3d at 1159, the ALJ must provide the analysis otherwise judicial review becomes impossible.

The Court stresses that the larger problem with the ALJ's opinion here is that it is missing the "because." In other words, the ALJ seemingly discredited some portion (or all) of Plaintiff's testimony regarding his complaints of fatigue, but the ALJ did not provide clear reasoning. Thus, the ALJ's rationale is not clear enough that it has the power to convince the Court. See Smartt, 53 F.4th at 499.

Because the failure to properly evaluate a plaintiff's subjective complaints is patently consequential to the ultimate nondisability determination, Treichler, 775 F.3d at 1102, the Court will reverse the final decision of the Commissioner and remand for further proceedings. The Court has considered the parties' remaining arguments on this issue and finds them unpersuasive or unnecessary to reach in light of the foregoing.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.**

**CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is REVERSED and REMANDED for further proceedings. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Wyatt Kevin Harris and against the Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **August 27, 2026**

STANLEY A. BOONE
United States Magistrate Judge